**CROSNER LEGAL, P.C.**
Michael T. Houchin (SBN 305541)
Craig W. Straub (SBN 249032)
Zachary M. Crosner (SBN 272295)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-763
Fax: (310) 510-6429
mhouchin@crosnerlegal.com
craig@crosnerlegal.com
zach@crosnerlegal.com

Attorneys for Plaintiff
GLENN CRUZ

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

GLENN CRUZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED INDUSTRIES CORPORATION,

Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Glenn Cruz ("Plaintiff") brings this action against United Industries Corporation ("Defendant"), individually and on behalf of all others similarly situated and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this consumer class action to hold Defendant accountable for the deceptive labeling of its Black Flag Flea & Tick Home Treatment ("the Product"). Defendant employs a bait-and-switch marketing strategy, luring consumers with high-performance promises on the front of the bottle while burying contradictory requirements in a hidden interior booklet. On the shelf, the one-gallon Product prominently claims it "Treats 1,600 sq. ft." and "Prevents flea infestation for up to 7 months." To any reasonable consumer, these claims placed in immediate proximity imply that a single bottle provides long-term flea and tick protection.

2. The reality of the Product's performance is intentionally obscured behind a sealed, multi-page booklet on the back of the container. Tucked away in these interior "Directions for Use" is a restrictive disclosure that invalidates the front-label promise: "**For long-term flea control, apply one gallon per 750 sq. ft**." This creates a mathematical impossibility; because the bottle contains only one gallon, it cannot achieve the advertised 7-month protection for the advertised 1,600 sq. foot area. To achieve the level of protection prominently promised on the front, a consumer would be required to purchase and use more than two bottles.

3. This discrepancy is rooted in the chemical requirements of the active ingredient Pyriproxyfen (Nylar), which must be applied at a high saturation level to break the flea life cycle for the promised duration. By inducing consumers to spread one bottle over 1,600 sq. ft., Defendant ensures the Product is applied at a concentration that is less than half of what is required for seven-month efficacy.

4. As established by Federal Trade Commission research, consumers reasonably expect "up to" claims— such as "up to 7 months"— to represent the maximum results achievable under normal conditions.[1] Plaintiff and Class Members paid a premium for long-term protection they did not receive, and had they known the truth hidden beneath the seal, they would not have purchased the Product.

5. Plaintiff brings this action on behalf of a California consumer class for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for breach of express warranty.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Product in California, specifically in this judicial district. The marketing of the Product, including the decision of what to include and not include on the label, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Product to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Product

[1] *See* Exhibits 1 and 2 attached hereto.

to Plaintiff and members of the Class in California. By distributing and selling the Product in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff purchased the Product within this District.

## PARTIES

9. Plaintiff Glenn Cruz is an individual consumer and, at all times relevant to this action, was a citizen of and resided in the State of California. During the Class Period, Plaintiff purchased the Product for personal, family, or household use at a Home Depot store located in or around Downey, California. Plaintiff saw and relied on the "Treats 1,600 sq. ft." and "Prevents flea infestation for up to 7 months" claims on the front label of the Product when making his purchase decision. Plaintiff would not have purchased the Product, or would have paid less for the Product, had he known the truth about Defendant's advertising. As a result, Plaintiff suffered injury in fact when he spent money to purchase the Product he would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff desires to purchase the Product again if the labels of the product were accurate. However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Product's advertising and labeling when deciding in the future whether to purchase the Product.

10. Defendant United Industries Corporation is a Delaware corporation with its principal place of business located in St. Louis, Missouri. At all relevant times, Defendant manufactured, marketed, advertised, distributed, and sold the Product throughout California and the United States.

## FACTUAL ALLEGATIONS

### A. Defendant's Deceptive Representations

11. The Product is sold in a one-gallon bottle designed for indoor home use. To induce sales, Defendant makes two primary, high-impact affirmations of fact on the front label: that the Product "**Treats 1,600 sq. ft.**" and that it "**Prevents flea infestation for up to 7 months**." The front label of the product is shown below:



12. The "Treats 1,600 sq. ft." and "Prevents flea infestation for up to 7 months." claims are presented in bold, high-visibility text in immediate proximity to one another. To a reasonable consumer, this configuration carries a clear and tangible meaning: that a single bottle is an all-in-one solution capable of providing seven months of protection for a standard 1,600 sq. ft. area.

13. Defendant reinforces this expectation on the exterior back label by repeating the coverage rate and affirmatively instructing the consumer: "**HOW MUCH TO USE: One gallon treats 1,600 sq. ft. Do not saturate**". Relying on these clear and conspicuous representations, consumers purchase the Product under the belief that they are receiving a specific amount of long-term protection that the Product cannot, in fact, provide at the directed application rate. Below is an image of the back label of the Product.



**B. The Fine Print in the Booklet Attached to the Back of the Product Reveals that Defendant's Label Claims Are False**

14. As shown in the upper right-hand corner of the image above, the back label of the Product peels back to reveal an instruction booklet. The true nature of the Product's performance is intentionally obscured from the consumer at the point of purchase. While the front label presents a straightforward promise of 1,600 sq. ft. of coverage, the critical limitations to this claim are buried within a sealed, multi-page "Directions for Use" booklet attached to the back of the container. To access these instructions, a consumer must manually unseal the booklet, a task unlikely to be performed in a retail aisle prior to purchase.

15. Tucked away in the fine print of this interior booklet is a restrictive disclosure that fundamentally invalidates the high-performance promises made on the front label: "**For long-term flea control, apply one gallon per 750 sq. ft**." as shown below



16. Because the Product is sold in a one-gallon bottle, this instruction creates a mathematical impossibility for any consumer relying on the front-label representations. A consumer following the front-label coverage rate of 1,600 sq. ft. would, by definition, fail to achieve the "long-term flea control" (the 7-month protection) prominently advertised on the face of the bottle.

### C. The Only "Long-Term" Flea Control that Can be Achieved Is "Up To Seven Months"

17. The bait-and-switch discrepancy in Defendant's labeling is fundamentally rooted in the chemical properties and required application rates of the Product's active ingredients. The Product contains Pyriproxyfen, also known as Nylar, an Insect Growth Regulator ("IGR") designed to break the flea life cycle by preventing larvae from developing into adults.[2] While Defendant's front label promises that the Product "Prevents flea infestation for up to 7 months," this seven-month duration represents the absolute maximum "long-term" efficacy achievable by the active ingredient.[3]

18. To reach this seven-month threshold—which Defendant internally defines as "long-term flea control"—the Product must be applied at a high saturation level. As disclosed in the hidden interior booklet, this results-oriented application requires a rate of one gallon per 750 sq. ft. By prominently advertising a 1,600 sq. ft. coverage rate on the front label, Defendant induces consumers to apply the Product at a concentration that is less than half (approximately 46%) of what is required to achieve the only "long-term" protection the Product is capable of providing.

---

[2] E. Bouhsira, et al., *Efficacy of permethrin, dinotefuran and pyriproxyfen on adult fleas, flea eggs collection, and flea egg development following transplantation of mature female fleas (Ctenocephalides felis felis) from cats to dogs*, VETERINARY PARASITOLOGY 190 (2012) 541–546 at p. 542.

[3] Nancy C. Hinkle et al., *Residual Effectiveness of Insect Growth Regulators Applied to Carpet for Control of Cat Flea (Siphonaptera: Pulicidae) Larvae*, 88 J. ECON. ENTOMOL. 903 (1995).

19. Scientific research confirms that carpeting is "perhaps the most difficult substrate to treat effectively with an insecticide" because the high surface area of the carpet matrix prevents penetration into the nap and "reduces the active ingredient per unit area."[4] Consequently, the seven months of protection promised on the front label—the Product's maximum possible duration—can only be achieved through the heavy application rate surreptitiously disclosed in the interior booklet. This creates a direct contradiction with the exterior back label, which affirmatively instructs the consumer "**Do not saturate**" while maintaining the 1,600 sq. ft. coverage rate.

20. A consumer who follows the high-visibility front-label instruction to treat 1,600 sq. ft. will never achieve the seven months of protection they paid for, because the lower concentration is scientifically insufficient to sustain the IGR's effectiveness for that duration on common household surfaces.[5]

21. Defendant's reliance on the phrase "up to 7 months" does not excuse this misrepresentation. As shown in consumer perception research conducted for the FTC, the "up to" qualifier does not effectively communicate a range of results to the public; rather, nearly half of consumers interpret such ads as representing the results a typical user will achieve under normal circumstances.[6] In this case, Defendant has intentionally manufactured a scenario where the "normal" use suggested by the front label (one gallon per 1,600 sq. ft.) is physically and scientifically incapable of delivering the "long-term" seven-month results promised.

22. Ultimately, reasonable consumers should not be expected to look beyond the clear and conspicuous representations on the front of a label to discover the truth buried in the fine print of a sealed booklet attached to the back label of the Product.

---

[4] *See* Nancy C. Hinkle et al., *supra*, at 906.

[5] *See* E. Bouhsira et al., *supra*, at 542 (noting that IGRs must be present in sufficient quantities to disrupt the development of eggs and larvae effectively).

[6] *See* Exhibits 1 and 2 attached hereto.

## NO ADEQUATE REMEDY AT LAW

38. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Product more than three years prior to the filing of the complaint may be barred from recovery if equitable relief were not permitted under the UCL.

39. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Product, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

40. A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Product as being capable of treating 1,600 sq. feet for seven months. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawfully sold products is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful

marketing efforts. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

41. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ALLEGATIONS

23. Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class ("Class" or "Class Members"):

> All persons who, while in the state of California, purchased the Product, for personal use, at any time from four years preceding the filing of this Complaint through the date class notice is first disseminated.

24. Excluded from the from the Class are: (i) Defendant and their officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

25. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

26. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

27. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are hundreds of consumers who are Class Members described above who have been damaged by Defendant's practices.

28. <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant made false or misleading statements of fact relating to the labeling of the Product;

b. Whether Defendant violated state consumer protection statutes;

c. Whether Defendant practices violate California's Consumers Legal Remedies Act;

d. Whether Defendant practices violate California's Unfair Competition law, California Business and Professions Code sections 17200, *et. seq.*,

e. Whether Defendant breached an express warranty for the Product;

f. Damages needed to reasonably compensate Plaintiff and Class Members; and

g. Whether Plaintiff and the proposed Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of this suit;.

29. Typicality: Plaintiff is a member of the Class Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same unlawful conduct and purchased the Product. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

30. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the alleged claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating Plaintiff's rights; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

31. Superiority: The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

32. In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

33. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

34. Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct.

## FIRST CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750 *et seq.***

42. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

43. Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

44. At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

45. At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

46. At all relevant times, the Product manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

47. The purchases of the Product by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

48. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Product's labeling that the Product treats 1,600 sq. feet for long term flea control. Defendant failed to properly disclose that the Product can actually only treat 750 sq. feet for long term

flea control. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Product treats less square feet than what is represented to be important to their decision in purchasing the Product. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Product has characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Product is of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Product with an intent not to sell the Product as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

49. Defendant violated the CLRA because the Product was prominently advertised as being able to treat 1,600 sq. feet for long term flea control but, in reality, the Product can only treat 750 sq. feet. Defendant knew or should have known that its "1,600 sq. feet" claim is false and misleading.

50. Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

51. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Product has characteristics that it does not have.

52. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

53. Pursuant to California Civil Code section 1782, Plaintiff will notify Defendant in writing by certified mail of the alleged violations of the CLRA and demand that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will amend this Complaint to seek damages pursuant to the CLRA.

54. Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

## SECOND CLAIM FOR RELIEF
## Violation of California's Unfair Competition Law
## Cal. Bus. & Prof. Code §§ 17200 et seq.

55. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

56. Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

57. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

58. Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or

practices. Such conduct is ongoing and continues to this date.

59. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact of which it had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

60. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Product. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Product and Defendant's unlawful, unfair, and fraudulent practices.

61. Defendant's wrongful business practices and violations of the UCL are ongoing.

62. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

63. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law (an injunction is the primary litigation goal of Plaintiff); and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## THIRD CLAIM FOR RELIEF
## Breach of Express Warranty

64. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

65. Plaintiff brings this claim for breach of express warranty individually and on behalf of the Class against Defendant.

66. As the manufacturer, marketer, distributor, and seller of the Product, Defendant issued an express warranty by representing to consumers at the point of purchase that the Product "Treats 1,600 sq. ft." and that it "Prevents flea infestation for up to 7 months."

67. Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Product, including the representations that the Product "Treats 1,600 sq. ft." and that it "Prevents flea infestation for up to 7 months."

68. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

69. In fact, the Product does not conform to Defendant's representations because the Product will not treat 1,600 sq. feet for long term flea control and instead

only treats 750 sq. feet. By falsely representing the Product in this way, Defendant breached express warranties.

70. Plaintiff relied on Defendant's (the manufacturer) representations on the Product's labels and advertising materials which provide the basis for an express warranty under California law.

71. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the Product that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Product they purchased was different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Product they purchased had less value than if Defendant's representations about the characteristics of the Product were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Product or would not have paid as much as they did for it.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: January 29, 2026

**CROSNER LEGAL, P.C.**

By: *_/s/ Michael T. Houchin_*

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com
***Attorneys for Plaintiff and the Proposed Class***

Civil Code Section 1780(d) Affidavit

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. Defendant has done, and is doing, business in California, including in this District. Plaintiff alleges that he purchased the Product within this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed January 29, 2026 at San Diego, California.

By:

*/s/ Michael T. Houchin*

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com